

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHEA OSTREICHER, Individually and as Trustee
of the LINKA LANDAU IRREVOCABLE LIFE
INSURANCE TRUST dated May 31, 2007,

                                      Plaintiff,

                         -against-

LINCOLN NATIONAL LIFE INSURANCE
COMPANY, DOMINIC BRAUS, as the Trustee
of the LINKA LANDAU LIFE INSURANCE
TRUST dated May 31, 2007, ADVANCED
TRUST & LIFE ESCROW SERVICES , LTA,
ARYEH SAFERN, AND ALAN RUBENSTEIN,

                                     Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-6904 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Shea Ostreicher brings this action against Defendants Lincoln National Life Insurance Company ("Lincoln"), Dominic Braus, Advanced Trust & Life Escrow Services ("ATL"), Aryeh Safern, and Alan Rubenstein alleging breach of contract, unjust enrichment, fraud, and civil conspiracy, all arising out of a dispute concerning the ownership and sale of a life insurance policy. (Am. Compl. (Dkt. 29).) Lincoln, joined by the remaining Defendants, moves to dismiss the action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] (Lincoln Not. of Mot. (Dkt. 42); ATL Mem. in Supp. of Mot. (Dkt. 44-1) at

---

[1] In addition to joining Lincoln's motion, ATL and Braus move separately under Rule 12(b)(2) to dismiss the action as against them for lack of personal jurisdiction. (ATL Not. of Mot. (Dkt. 44); Braus Not. of Mot. (Dkt. 49).) Ordinarily the court would first decide Defendants ATL and Braus's personal jurisdiction motions before resolving any questions that might affect their substantive rights and liabilities. In this case, however, res judicata provides a sufficient basis to dispose of Plaintiff's claims as against all Defendants (including ATL and Braus). Accordingly,

1

15; Safern Not. of Mot. (Dkt. 46); Rubenstein Not. of Mot. (Dkt. 47); Braus Mem. in Supp. of Mot. (Dkt. 49-1) at ECF p. 9).)

For the reasons set forth below, the motions are GRANTED.

## I. BACKGROUND

### A. Factual Allegations

The court takes the facts from the complaint and assumes that they are true for the purposes of this motion. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The court also takes notice of public filings in previous litigation involving Plaintiff's claims. Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."); Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC, No. 07-cv-8139, 2008 WL 3925175, at *1 n.2 (S.D.N.Y. Aug. 26, 2008), aff'd, 347 F. App'x 711 (2d Cir. 2009) (taking judicial notice of parties' public filings in a bankruptcy proceeding when deciding motion to dismiss).[2]

Plaintiff was appointed as trustee of the Linka Landau Irrevocable Life Insurance Trust (the "Trust") upon its formation on May 31, 2007. (Am. Compl. ¶ 9.) As trustee, Plaintiff was the beneficiary of a life insurance policy held by the trust (the "Policy"), which was issued by Lincoln insuring the life of the Trust's settlor, Linka Landau. (Id. ¶¶ 8-9.)

---

and in the interest of judicial economy, for the purpose of this decision the court assumes that its exercise of personal jurisdiction over ATL and Braus is permissible.

[2] Specifically, the court takes judicial notice of all filings and decisions in the following actions: Life Partners, Inc. v. Braus, No. 2012-4568 (McLennan Cty. Dist. Ct., filed November 20, 2012) (the "Texas Action"); Ostreicher v. Lincoln Nat'l Life Ins. Co., No. 502362/2015 (Kings Cty. Sup. Ct., filed March 2, 2015) (the "New York Action"); In re Life Partners, Inc., No. 15-41995 (RFN) (Bankr. N.D. Tex., filed May 19, 2015) (the "Bankruptcy Action"); Ostreicher v. Lincoln Nat'l Life Ins. Co., No. 16-ap-4053 (RFN) (Bankr. N.D. Tex., filed Mar. 22, 2016) (the "Adversary Proceeding").

2

In 2011, Plaintiff engaged Defendant Alan Rubenstein, an attorney, to assist him in managing the Trust. (Id. ¶ 17.) On May 26, 2012, Plaintiff received a letter from Lincoln informing him that Defendant Aryeh Safern had been appointed as trustee of the Trust. (Id. ¶ 19.) Plaintiff provided Lincoln with a forgery affidavit contesting the legitimacy of the notice that purported to appoint Safern as trustee. (Id. ¶ 22.) In or around July 2012, Safern, acting as trustee, sold the Policy to Life Partners. (Id. ¶¶ 24, 29-30.) As of September 2017, Ms. Landau, the individual covered by the Policy, has passed away and thus the Policy has come due. (Id. ¶¶ 37-40.)

### B. Procedural History

#### 1. Prior Litigation

On November 20, 2012, Life Partners filed an action before Judge Jim Meyer in the McLennan County District Court in McLennan County, Texas, seeking a declaratory judgment that it, and not the Trust, was the owner of the Policy. (Id. ¶ 31; Original Pet. in Texas Action (Dkt. 42-4).)[3] Although Life Partners initially named Plaintiff (in both his individual capacity and his capacity as trustee) as a defendant in the Texas Action, during the pendency of that suit, the Trust's settlors and beneficiaries amended the trust documents to name Defendant Dominic Braus, a Texas attorney, as sole trustee. (Am. Compl. ¶¶ 31, 46.) Thereafter, Life Partners voluntarily dismissed its claims against Plaintiff. (Am. Compl. ¶ 31; Not. of Nonsuit as to Shea Ostreicher in Texas Action (Dkt. 42-5).) In its final declaratory judgment, issued April 11, 2013, the Texas court declared that Plaintiff had no interest in the Trust and that Braus was the sole

---

[3] Where a party has submitted a relevant filing or decision from the Texas Action, New York Action, Bankruptcy Action, or Adversary Proceeding in this action the court includes the action in which the document was originally filed in its citation and cites to the relevant entry on the docket of this action.

3

trustee. (Final Decl. J. in Texas Action ("Texas J.") (Dkt. 42-6) at 2.) Judge Meyer also held that Life Partners was the owner of the Policy. (Id.)

On March 2, 2015, Plaintiff filed a suit in the Kings County Supreme Court against Life Partners, Lincoln, Safern, and Rubenstein seeking a declaratory judgment that Plaintiff remained the trustee and owner of the Policy and alleging causes of action for breach of contract against Lincoln; conversion and tortious interference with contract against Life Partners and Aryeh Safern; legal malpractice against Rubenstein; and unjust enrichment against Life Partners, Safern, and Rubenstein. (Verified Compl. in New York Action ("New York Compl.") (Dkt. 42-9) ¶¶ 39-72.) On May 19, 2015, Life Partners filed a petition for Chapter 11 protection before Judge Russell Nelms of the United States Bankruptcy Court for the Northern District of Texas. (Ch. 11 Pet. (Bankruptcy Action Dkt. 1).)[4] On March 14, 2016, Life Partners removed the New York Action to the Bankruptcy Court for the Eastern District of New York. (Not. of Removal in New York Action (Dkt. 42-10).) On March 22, 2016, Chief Judge Carla E. Craig, acting sua sponte, transferred the New York Action to the Bankruptcy Court for the Northern District of Texas pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 7087, where it proceeded as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001. (Order Transferring Claim (Adversary Proceeding Dkt. 1); Docket Sheet, Adversary Proceeding.)[5]

On November 1, 2016, Judge Nelms approved a Joint Plan of Reorganization. (Order Confirming Third Am. Plan of Reorg. (the "Plan") (Dkt. 42-8 at ECF pp. 2-20).) The Policy was

---

[4] Where no party has filed a copy of a relevant document on the docket in this proceeding, the court notes the action in which the document was filed and the relevant docket number in parentheses.

[5] On March 21, 2018, the Adversary Proceeding was reassigned to Judge Mark X. Mullin. (See Nov. 11, 2018 Order Reassigning Case, Adversary Proceeding.) At all times relevant to this action, however, the Adversary Proceeding was in front of Judge Nelms.

4

among the assets covered by the Plan (Ex. A to Order Confirming Third Am. Plan of Reorg. ("Ex. A to Plan") (Dkt. 42-8 at ECF p. 22)), and the Plan also served as "complete satisfaction of . . . all Claims and Interests against the Reorganized Debtors, the Estates, and their assets, properties, or interests in property . . . including demands, liabilities, and Causes of Action that arose before the Effective Date" (Plan at ECF p. 14). On April 7, 2017, Judge Nelms granted summary judgment in favor of Life Partners on Plaintiff's claims against it in the Adversary Proceeding. (Order Granting Summ. J. in Favor of Life Partners (Dkt. 42-14).) On April 26, 2017, Judge Nelms granted summary judgment for Lincoln on Plaintiff's claims in the Adversary Proceeding. (Order Granting Summ. J. in favor of Lincoln Nat'l Life Insurance Co. (Dkt. 42-15).) On September 26, 2018, Judge Nelms granted the Chapter 11 Trustee's objection to the proof of claim that Plaintiff filed in the Bankruptcy Action related to the Policy and expunged the claim. (Order Granting Trustee Objection to Proof of Claim (Dkt. 52 at ECF pp. 4-6).)

2. The Instant Action

Plaintiff filed this suit in Kings County Supreme Court on November 21, 2017, and Defendants removed it to this court on November 28, 2017. (Not. of Removal ¶ 1 (Dkt. 1).) Plaintiff filed an amended complaint on April 6, 2018. (Am. Compl.)

Plaintiff avers several causes of action resulting from the allegedly fraudulent transfer of the Policy to Safern and then to Life Partners. Plaintiff first requests that the court enter judgment declaring that he is trustee and owner of the Policy (id. ¶¶ 58-62) and that any judgments in the Bankruptcy Action are void as to him (id. ¶¶ 77-90). Plaintiff then argues that Lincoln is liable for breach of contract resulting from its acceptance of fraudulent documents from Safern and Rubenstein. (Id. ¶¶ 70-76.) Next, Plaintiff contends that Defendants are collectively liable for unjust enrichment for depriving him of the Policy after Plaintiff demanded

5

its return. (Id. ¶¶ 58-62.) Finally, Plaintiff asserts causes of action for fraud and civil conspiracy against Rubenstein, Safern, and Braus for their alleged roles in depriving him of the Policy. (Id. ¶¶ 91-101.)

On July 13, 2018, Lincoln filed its motion to dismiss under Rule 12(b)(6), arguing that res judicata bars Plaintiff's claim. (Lincoln Not. of Mot.) Lincoln's motion has been joined by the other defendants. (Lincoln Not. of Mot.; ATL Mem. in Supp. of Mot. at 15; Safern Not. of Mot.; Rubenstein Not. of Mot.; Braus Mem. in Supp. of Mot. at ECF p. 9.) Plaintiff opposes each motion. (Pl. Consol. Mem. of Law in Opp. (Dkt. 42-19).)

On November 13, 2018, the Bankruptcy Court of the Northern District of Texas issued an order holding Plaintiff in contempt for filing this action in contradiction of the Plan. (Contempt Order (Dkt. 62 at ECF pp. 3-8).)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss, Plaintiff's complaint must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013) (citations omitted).

In deciding whether to grant a motion to dismiss, a court may take notice of public records, including court filings. See Pani, 152 F.3d at 75; Mangiafico v. Blumenthal, 471 F.3d 391, 397-98 (2d Cir. 2006) (holding that district court could take notice of docket sheet in another litigation because it was a public record). Of particular relevance here, a court evaluating the res judicata effect of previous litigation may take "judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Kesten v. Eastern Sav. Bank,

6

No. 07-cv-2071 (JFB), 2009 WL 303327, at *3 (E.D.N.Y. Feb. 9, 2009) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

### B. Res Judicata

Res judicata, or claim preclusion, is an affirmative defense based on the principle that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

When res judicata is asserted based on a federal judgment, the party invoking it must demonstrate that "1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." In re Layo, 460 F.3d 289, 292 (2d Cir. 2006) (quoting Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 87-88 (2d Cir. 1997). "For res judicata purposes, a participant in a bankruptcy proceeding is considered a party to the proceeding." Farahzad v. Lawyers Title Ins. Co., No. 10-cv-6010 (JS), 2012 WL 4344325, at *3 (E.D.N.Y. Sept. 21, 2012). In determining whether causes of action are identical, the court should examine "whether the same transaction, evidence, and factual issues are involved in both cases." Corbett, 124 F.3d at 89 (citations omitted). When considering the res judicata effect of a bankruptcy proceeding the court should also examine "whether an independent judgment in a separate proceeding would 'impair, destroy, challenge, or invalidate the enforceability or effectiveness' of the reorganization plan.'" Id. at 88 (quoting Sure–Snap Corp. v. State Street Bank and Trust Co., 948 F.2d 869, 875-76 (2d Cir. 1991)).

C. **Collateral Estoppel**

"Collateral estoppel, or issue preclusion, bars a party and its privities from relitigating a claim it previously litigated and lost." Falbaum v. Pomerantz, 19 F. App'x 10, 12 (2d Cir. 2001) (summary order). In this circuit, collateral estoppel applies where: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party [raising the issue] had a full and fair opportunity to litigate the issue [in the prior proceeding]; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288-89 (2d Cir. 2002). Unlike res judicata, collateral estoppel does not require identity of parties or their privities. See Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 327-28 (1979); Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 327-28 (1971). In addition, collateral estoppel can be invoked based on orders of bankruptcy courts. See Falbaum, 10 F. App'x at 12-13.

III. **DISCUSSION**

For the following reasons, the Plan operates as res judicata to bar Plaintiff's claims against ATL, Lincoln, Safern, and Rubenstein and has preclusive effect to bar Plaintiff's claims against Braus. Accordingly, the motions to dismiss are granted.

A. **Res Judicata as to Claims Against ATL, Lincoln, Safern, and Rubenstein**

As a preliminary matter, Plaintiff asserts that the court in the Bankruptcy Action lacked personal jurisdiction over him. (Am. Compl. ¶ 79.) However, the bankruptcy court obtained personal jurisdiction over Plaintiff when he appeared before it to contest Life Partners' and Lincoln's motions for summary judgment in the Adversary Proceeding. See Apr. 20, 2016 Tr. of Status Conference ("Status Tr.") (Adversary Proceeding Dkt. 25); Mar. 30, 2017 Tr. of Hearing on Life Partners Mot. for Summ. J. ("Life Partners Tr.") (Adversary Proceeding Dkt. 50);

8

Apr. 24, 2017 Tr. of Hearing on Lincoln Mot. for Summ. J. ("Lincoln Tr.") (Adversary Proceeding Dkt. 51); Golden v. Cox Furniture Mfg. Co., Inc., 683 F.2d 115, 118 (5th Cir. 1982) (appearing in case without objecting to personal jurisdiction constitutes waiver of any such objection (citing, inter alia, Fed. R. Civ. Pro. 12(h))).

Plaintiff also argues that the bankruptcy court lacked subject matter jurisdiction because the Trust documents contain a New York forum selection clause. (Am. Compl. ¶¶ 81-83.) However, forum selection clauses are not jurisdictional, as "parties have no power by private contract to oust a federal court of jurisdiction otherwise obtaining." New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997). Moreover, Plaintiff failed to raise this issue in the Adversary Proceeding. (See Status Tr.; Life Partners Tr.; Lincoln Tr.) And, in any event, "a party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." Corbett, 124 F.3d at 88-89 (emphasis omitted) (quoting Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, n.9 (1982)).

Having established that Plaintiff's objections to the jurisdiction of the bankruptcy court are without merit, the court will next examine whether the Plan operates as res judicata to bar the current action. The Plan satisfies the first and third elements of res judicata because it is a final decision on the merits by a court of competent jurisdiction. See Farahzad, 2012 WL 4344325, at *3 (noting that a bankruptcy court's confirmation order constituted a final judgment on the merits by a court of competent jurisdiction). As explained above, the Plan serves as "complete satisfaction of . . . all Claims and Interests against the Reorganized Debtors, the Estates, and their assets, properties, or interests in property . . . including demands, liabilities, and Causes of Action that arose before the Effective Date." (Plan at ECF p. 14.) The Policy was one of the

assets covered by the Plan. (Ex. A to Plan.) Plaintiff's claims relating to the Policy arose before the Plan took effect and, as such, were satisfied by the Plan once it was approved by the Bankruptcy Court.

Likewise, the Plan satisfies the second element of res judicata because all of the parties to this lawsuit (except Defendant Braus) were either parties to the Bankruptcy Action or in privity with parties to the Bankruptcy Action. Plaintiff, Lincoln, Safern, and Rubenstein were all made parties to the Bankruptcy Action when Life Partners removed the New York Action and had it transferred to become part of the Bankruptcy Action. See Sure-Snap, 948 F.2d at 877 (plaintiff's appearance as co-plaintiff in an adversary proceeding during bankruptcy sufficient to make her a party to bankruptcy proceeding even though she was never formally named as such); In re Brown, 219 B.R. 191, 194 (B.A.P. 6th Cir. 1998) ("Courts have held in the context of bankruptcy matters that not only formally named parties, but all participants in the bankruptcy proceedings are barred by the doctrine of res judicata from asserting matters they could have raised in the bankruptcy proceedings." (collecting cases)). Defendant ATL, meanwhile, is in privity with Life Partners; its interests and Life Partners' are aligned because ATL holds the proceeds of the Policy in escrow for Life Partners' benefit. (Am. Compl. ¶ 39); Melwani v. Jain, No. 02-cv-1224 (DF), 2004 WL 1900356, at *2 (S.D.N.Y. Aug. 24, 2004) ("Privity may be found where a party's interest in litigation is virtually identical to an interest it had in a prior litigation, where it was not actually named, but can be said to have had 'virtual representation.'" (quoting Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1995))).[6]

---

[6] The closeness of the relationship is evident from Plaintiff's complaint. Plaintiff refers to Life Partners and ATL as interchangeable entities (Am. Compl. ¶ 41) and seems to have confused the two when alleging that ATL—not Life Partners—obtained the final declaratory judgment in the Texas Action. (Am. Compl. ¶ 53.)

10

Finally, the Plan satisfies the fourth requirement of res judicata because the causes of action Plaintiff asserts in this action were or could have been asserted in the New York Action and adjudicated in the Adversary Proceeding, and because allowing this suit to proceed would impair the effectiveness of the Plan. (Compare New York Compl. ¶¶ 10-38 with Am. Compl. ¶¶ 8-36); see also Washington v. Blackmore, 468 F. App'x 86, 87 (2d Cir. 2012) (summary order) ("[A] claim is barred by res judicata so long as it could have been litigated in a prior action.").

Plaintiff's claims in the New York Action and this action arise from the same transaction, same evidence, and involve the same factual issues. In the New York Action, Plaintiff requested declaratory judgment that Plaintiff remained the trustee and owner of the Policy (New York Compl. ¶¶ 39-42); he makes the same request in this action (Am. Compl. ¶¶ 58-62). Plaintiff alleged a cause of action for breach of contract against Lincoln (New York Compl. ¶¶ 43-46) and makes the same claim in this action (Am. Compl. ¶¶ 43-46). Plaintiff alleged unjust enrichment against Life Partners, Safern, and Rubenstein (New York Compl. ¶¶ 66-72); here, Plaintiff makes the same claim against all Defendants (Am. Compl. ¶¶ 70-76). Plaintiff made claims for conversion and tortious interference with contract against Life Partners and Safern and legal malpractice against Rubenstein in the previous action (New York Compl. ¶¶ 47-65); here, Plaintiff does not reassert these claims, but he does assert similar claims of fraud and civil conspiracy against Safern, Rubenstein, and Braus that arise out of the same conduct (Am. Compl. ¶¶ 91-101).

Moreover, if Plaintiff were allowed to litigate this action before this court, a finding in his favor would impair the effectiveness of the Plan by providing Plaintiff means to collaterally attack the Bankruptcy Court's disposition of the Policy in the Plan. See Corbett, 124 F.3d at 91 ("[T]he finality interests [served by res judicata] are particularly important in the bankruptcy

context, where numerous contending claims and interests are gathered, jostle, and are determined and released").

The court therefore concludes that the Plan precludes Plaintiff's claims against ATL, Lincoln, Safern, and Rubenstein and grants those Defendants' motions to dismiss all claims.

**B.    Collateral Estoppel as to Claims Against Braus**

While Braus was not a party to the Bankruptcy Action or the Adversary Proceeding, the Plan and related resolution of the Adversary Proceeding support the application of collateral estoppel to bar Plaintiff's claims against him.

As discussed above, the Plan fully resolved all claims relating to the bankruptcy, including all disputes as to the owner of the Policy, which Plaintiff asserted in the New York Action and were resolved in the Adversary Proceeding.[7] As Plaintiff's claims against Braus involve Braus's alleged role in depriving Plaintiff of his rights in the Policy, these claims turn on an identical issue to one already litigated and resolved in the Bankruptcy Action and Adversary Proceeding—namely, ownership of the Policy. See Falbaum, 19 F. App'x at 12 (bankruptcy court's prior resolution of issues determinative of claims asserted in subsequent proceeding barred those claims). Likewise, Plaintiff had a full and fair opportunity to litigate this issue in the Bankruptcy Action, where he filed a proof of claim, and in the Adversary Proceeding, where he filed a full brief and presented oral argument in opposition to Life Partners' motion for summary judgment, which Judge Nelms considered before resolving Plaintiff's claims. (See Pl. Brief in Opp. to Life Partners Mot. for Summ. J. (Adversary Proceeding Dkt. 19); Life Partners Tr.); see also Zapata v. HSBC Holdings plc, __ F. Supp. 3d __, 2019 WL 4918626, at *5 (E.D.N.Y. 2019) (collateral estoppel applied where party was provided opportunity to fully brief

---

[7] As also discussed above, Judge Nelms also resolved these claims when he granted the Chapter 11 Trustee's objection to Plaintiff's proof of claim.

issue resolved against it in prior proceeding). And, of course, a determination that Plaintiff had no interest in the Policy was an essential element of Judge Nelms's decision that Plaintiff could not bring claims related to the alleged wrongful deprivation of that interest. (See Life Partners Tr. at 44:21-47:12.)[8]

Accordingly, the court concludes that the Plan and Adversary Proceeding preclude Plaintiff's claims against Braus in this proceeding and grants Braus's motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendants' (Dkts. 42, 44, 46, 47, 49) motions to dismiss are GRANTED and this action is DISMISSED WITH PREJUDICE. The Court of Court is respectfully DIRECTED to mail a copy of this opinion to pro se Defendant Dominic Braus at his address of record, enter judgment in favor of Defendants, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
December 23, 2019

S/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[8] And, in any event, although the court has assumed that it may exercise personal jurisdiction over Braus for the purpose of rendering this decision, it is doubtful that it would reach this same conclusion were it to examine the personal jurisdiction issue on the merits. Likewise, even if personal jurisdiction over Braus were permissible and the claims against him not otherwise barred, the court is not persuaded that the allegations in Plaintiff's amended complaint plausibly state claims against Braus.

13